IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MICHAEL SHANE WILMOTH                                    PLAINTIFF

V.                              NO. 10-5048

DEPUTY LOCKHART ET AL.                                   DEFENDANTS

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Now before the Court is Plaintiff's Motion to Withdraw
Motion to Dismiss and Settlement Agreement (Doc. 107);
Defendants' Motion for Sanctions (Doc. 123); and Plaintiff's
Motion for Sanctions (Doc. 132). A history of the proceedings
in this case is as follows:

**I.   HISTORY OF PROCEEDINGS:**

1.   On December 2, 2011, a Settlement Conference was held
before the Honorable United States Magistrate Judge James R.
Marschewski.  At the conclusion of the conference, after the
parties agreed to settle this matter, Judge Marschewski recorded
the nature of the agreed upon terms, as follows:

> This is a settlement conference that began
> at 10:00 today.  It is 11:37.  The parties have
> negotiated in good faith and reached a settlement
> of all of the claims that pertain to the Benton
> County defendants that the Court has named, and
> the parties have agreed to settle this case for
> $14,500.  That will be by check, which was to be
> made payable to Iris Wilmoth Rowley, R-o-w-l-e-y.
> Ms. Rowley resides at P.O. Box 733 – or that's
> her address – 733 in Gravette.  Ms. Rowley is the
> mother of Mr. Wilmoth.
>
> Mr. Wilmoth is currently in custody and desires

-1-

that this check be made payable to his mother,
and that his mother will then deposit the check
into a checking account, or an account in her
name, but for the benefit of Mr. Wilmoth.

Now, Mr. Wilmoth, I've discussed that with you in
settlement negotiations, and you're telling me in
open court here that that's what your desire is.
Is that correct?

MR. WILMOTH: Yes, sir.

(Doc. 121 at pgs. 2-3).  At the conference, the parties also

agreed that Plaintiff's fines and costs which were outstanding

in his case, would be Plaintiff's obligation to pay, and that

the agreed upon amount of $14,500 did not include the

outstanding fines and costs.  The following dialogue between

Judge Marschewski and Plaintiff confirms this agreement:

THE COURT: All right.  Now, Mr. Wilmoth, we
also discussed in this settlement negotiation
that there was currently a fine and court costs.
We had originally tried to negotiate that the –
for a lesser amount, and that the fine and the
court costs would be paid, but we were unable to
get confirmation through the – through the
prosecutor's office or the court system in Benton
County to waive that fine –

MR. WILMOTH: Yes, sir.

THE COURT:  - - to satisfy it.  So you
understand in this Settlement Agreement, this
$14,500, that the fine that's outstanding in your
current case that you are incarcerated on will be
your obligation to pay?

MR. WILMOTH: Yes, sir.  I'm going to have my
mother pay that right away.

THE COURT: All right.  I understand that.
And also there's also court costs.  And you have
paid a portion of the court costs through the IFP

-2-

procedure, but the balance of that will be your obligation to pay.

MR. WILMOTH:   Yes, sir.

THE COURT: But all of that was taken into consideration in the – in the defendants increasing the value that there were willing to offer you?

MR. WILMOTH:   Yes, sir.

THE COURT: All right.   Further, the settlement is that the – Benton County has agreed to cover all of the – Mr. Wilmoth's medical expenses incurred while at Benton County as a result of his incarceration on these charges and that gave rise to the Complaint, this 1983 Complaint.

Mr. Wilmoth has also executed a form required by the defendant acknowledging that he is – to his knowledge, he was – he may have been on Medicare of Medicaid when he was a young person. He's not sure.   Maybe was inserted onto the form.   He doesn't believe that he was covered at this particular time, or covered by any other insurance.   I'm not sure if I asked you that, Mr. Wilmoth.  Were you covered by any other insurance that you were –

MR.WILMOTH: No, sir.

THE COURT: All right.   But you have executed that form that they have asked you to sign in good faith and to the best of your knowledge and understanding.   Is that correct?

MR. WILMOTH: Yes, sir.

(Doc. 121 at pgs. 4-5).  Judge Marschewski asked Mr. Wilmoth,

who signed a Release of All Claims as to Benton County

Defendants, whether it was Plaintiff's intent, as a result of

the settlement, to dismiss the claims against the Benton County

Defendants, to which Plaintiff responded "Yes."  (Doc. 121 at p. 6).  At the conclusion of the recording, Judge Marschewski asked Plaintiff if there was anything else he would like to state for the record, to which Plaintiff responded "No, sir."  (Doc. 121 at p. 7).

2.  On that same day, December 2, 2011, a Joint Motion to Dismiss Separate Benton County Defendants with Prejudice, which was signed by Plaintiff and Mr. Robert L. Beard, Jr., Defendants' counsel, was filed, (Doc. 105).

3.  On December 5, 2011, the undersigned filed a Report and Recommendation, recommending that Plaintiff's Complaint be dismissed with prejudice as to the Benton County Defendants, and giving the parties fourteen days from receipt of the report and recommendation in which to file written objections to the report.  (Doc. 106).

4.  On December 8, 2011, Plaintiff filed a Motion to Withdraw Settlement Agreement and Joint Motion to Dismiss, contending that he was under "heavy medication/drugs and could not make a sound decision without the help of some legal adviser."  (Doc. 107 at p. 1).  Plaintiff also alleged that Defendants' counsel and Judge Marschewski had his medical records, and that they "took advanage [sic]" of him and "tricked the Plaintiff into signing the settlement agreement and Joint Motion to Dismiss knowing the Plaintiff was not of sound mind

-4-

and under heavy medication/drugs and could not make a sound legal decision." (Doc. 107 at p. 2).

5. On December 9, 2011, Defendants filed a response to the motion, stating that at no time during any conversation they had with Plaintiff prior to the settlement conference, did Plaintiff appear to be under the influence of drugs - he did not have slurred speech or appear to be intoxicated in any manner, nor did he say that he was under the influence of drugs. (Doc. 108 at p. 2). Defendants further stated that Plaintiff was asked a variety of questions on the record at the settlement conference, and never indicated that he did not understand or comprehend the questions. (Doc. 108 at p. 3). Counsel for Defendants stated that he stood ready to deliver the check pursuant to the terms of the settlement agreement, and that Plaintiff "has established a practice of agreeing to a settlement amount and then attempting to change the terms of the settlement by requesting more money."[1] (Doc. 108 at p. 3).

6. On December 12, 2011, the undersigned conducted a telephonic hearing on the Motion to Withdraw the Settlement Agreement and Joint Motion to Dismiss. (Doc. 119 at p. 2). During the hearing, Plaintiff stated that he was taking 50 milligrams of Nortriptyline, which, according to Plaintiff, was

---

[1]As will be discussed in further detail later, Mr. Beard testified at the February 28, 2012 hearing that he thought that they had a settlement previously, but that Plaintiff came back and wanted more.

for an injury to his wrist, and that he took it on midnight of December 1, 2011, the night prior to the date of the settlement conference. (Doc. 119 at pgs. 5-6). Plaintiff testified that he was usually clear-headed around 5:00 to 6:00 in the evening because it started wearing off, but asserted, "I was not of sound mind that morning [December 2, 2011]. I was under heavy medication." (Doc. 119 at p. 5).

7. When the undersigned asked Plaintiff what he remembered occurring on December 2, once he arrived at the courthouse, Plaintiff responded:

> I remember being taken into the courthouse. I remember the judge coming into the chambers, talking to both parties. I remember him – or we went in – or me and Mr. Beard went into another room and talked. Then I stayed in that other room until me and the judge talked again. We talked about the Settlement Agreement. He asked me if I'd signed some paper, but he didn't explain it to me. Then we went back into the courtroom, and he had me sign the – the paper, and everyone left, and they took me back.

(Doc. 119 at p. 7). When the undersigned asked Plaintiff what the terms of the settlement were, he responded:

> I remember him asking me if I would take less than the $15,000, and I told him I would. But I don't feel that I was of sound mind to make that decision because of the medication I was on, and –

(Doc. 119 at p. 7). The Court asked Plaintiff why he did not tell Judge Marschewski that he did not feel like he could make a decision that day. Plaintiff responded "I don't know, Your Honor. I should have and I didn't." (Doc. 119 at p. 9). Plaintiff contended that the terms of the settlement agreement

-6-

**AO72A**
**(Rev. 8/82)**

were not the terms he would have agreed to if he had been of sound mind that morning. (Doc. 119 at p. 10). Plaintiff then advised the Court that some days he did not take his medication, so that he could work on his case. (Doc. 119 at p. 11). However, he also stated that knowing he was going to have a settlement conference on December 2, 2011, he nevertheless took the medicine at midnight on December 1, 2011. (Doc. 119 at p. 11-12). The Court asked him why he did that, and Plaintiff stated "I can't – I don't know, Your Honor. I wasn't thinking clearly. The nurse brought it to me; I took it." (Doc. 119 at p. 12).

Plaintiff told the Court that he was on the Norytriptyline on the day of the telephonic hearing, December 12. The Court asked Plaintiff if he was as sound of mind on December 12 as he was on December 2. Plaintiff responded "Yes, Ma'am." (Doc. 119 at p. 8). He then qualified that by explaining that on December 12, the hearing was being held later in the afternoon (approximately 2:00 pm), when he was not as heavily drugged because "it wears off the later in the afternoon it gets." (Doc. 119 at p. 8). He said that his mind "is still cloudy from the medication right now at this point." (Doc. 119 at p. 8).

The Court asked Plaintiff what effect the medication had on him trying to make a judgment on what he would settle for. Plaintiff responded that it was "not so much the amount that I'm

-7-

disputing, Your Honor.   I can – I can live with the amount.
It's the terms of the settlement that I'm disputing and – those
are not terms that I would agree to."   (Doc. 119 at p. 13).

The Court went on to ask Plaintiff how Judge Marschewski
"tricked him" into signing the Settlement Agreement.   Plaintiff
responded:

> The way I feel is that he's a – he's a – he's a
> – swear to – to the Court, and I feel like that
> he – he had my medical records right there in
> front of him and he should have known I was under
> medication, and he – he never explained anything
> to me.   He never explained not any part of the
> Settlement Agreement to me.   I feel like if – if
> he's conducting this hearing and he knows I'm
> under medication, he should – he should at least
> explain the Settlement Agreement to me, and he
> never done that.   And I feel that is – deceived
> me into signing something that I was not of sound
> mind to sign.

(Doc. 119 at p. 15-16).   Plaintiff stated that Mr. Beard tricked
him the same way, "cause he knew that I was under medication."
(Doc. 119 at p. 16).

Mr. Beard advised the Court during the telephonic hearing
that Judge Marschewski talked to both him and Plaintiff in the
courtroom together at the settlement conference, that he then
talked to Plaintiff, who came back with a counter offer, which
included the fact that Plaintiff wanted Defendants to pay some
of his fines.   (Doc. 119 at p. 20).   Mr. Beard then said they
had a long break, where he contacted the county prosecuting
attorney regarding what it would take to take care of the fines.

-8-

It seemed to be too complicated of a process to happen in the short amount of time, and so, according to counsel, they just made a counter offer in dollars to cover everything, "which was $14,500, which was $500 less than what Mr. Wilmoth asked.  And the judge came back and told us we had a deal." (Doc. 119 at p. 21).  Counsel further stated that Judge Marschewski had the Settlement Agreement there for Mr. Wilmoth to sign, and went over it with him. Mr. Beard stated:

> And when he [Judge Marschewski]- and my memory was him
> going through, reading each paragraph aloud, and then
> explaining to Mr. Wilmoth what that meant.  And then he
> went on the record.  And I know that he had a copy of the
> signed Settlement Agreement with him when he went on the
> record, because when he went off the record, I had to
> approach the Court and ask the judge to give me the
> original back cause he still had my original and I needed
> it.  And I went and made copies and gave them to Mr.
> Wilmoth.

(Doc. 119 at p. 21-22).  Plaintiff admitted that at no time did he ever tell Mr. Beard or Judge Marschewski that he was under the influence of any drug that day, taking medication, or did not feel he was of sound mind, stating that he "figured you all knew cause you all had subpoenaed my medical records.  I figured the judge and you knew." (Doc. 119 at pgs. 9,23).

At the conclusion of the telephonic hearing, the Court advised the parties that it would subpoena the medical records from the Arkansas Department of Corrections.  As the medical records (Plaintiff's Ex. 1) confirmed that the Plaintiff was taking Nortriptyline at the time of the settlement conference,

AO72A
(Rev. 8/82)

the Court determined that an evidentiary hearing was warranted.

At the evidentiary hearing on February 28, 2012, Plaintiff testified that he was no longer taking the Nortriptyline, and that he was of sound mind. He stated that he took Nortriptyline at midnight the night before the settlement conference, and that it had heavy side effects. He testified that at the settlement conference, he and Mr. Beard talked at the beginning, then talked to Judge Marschewski in the courtroom, then he went into the small room and Judge Marschewski spoke to him. According to Plaintiff, then they went back into the courtroom, where Judge Marschewski had him sign the papers. Plaintiff stated that he knew where he was and why he was there, but that Judge Marschewski never explained the Settlement Agreement to him, and Mr. Beard lied to him about the terms. Plaintiff contended that he was lied to because he was told that Mr. Beard could not get in touch with the Prosecuting Attorney. The Court reminded Plaintiff that in the settlement conference recording, Judge Marschewski stated that they "were unable to get confirmation through the – through the prosecutor's office or the court system in Benton County to waive that fine –– " (Doc. 121 at p. 4). In addition, during the telephonic hearing held on December 12, 2011, Mr. Beard stated that "where we tried to – or we did contact the county prosecuting attorney regarding what it would take to take care of those fines.   It seemed to be too

-10-

complicated of a process to happen in the short amount of time that we needed there, and it had taken quite a bit of time."

Plaintiff testified that he did not tell Judge Marschewski that he was not of sound mind, because he thought it was Judge Marschewski's responsibility to know that Plaintiff was on medication. Plaintiff, however, acknowledged that he should have told Judge Marschewski. Plaintiff did not remember if he read the Settlement Agreement. He testified that he remembered that while he was in the back room, he was not sure he wanted to drop from the original amount he had offered to settle for.

Plaintiff acknowledged that he would have had to provide all of his personal information which was contained in the Settlement Agreement and Medicare/Medicaid form. He also testified that he brought up the issue of fines and costs at the settlement conference - that he wanted this from the start. He did not remember asking for medical expenses. Plaintiff testified that he was of more sound mind during the December 12, 2011 telephonic hearing than he was at the December 2 settlement conference, even though there was only a 2 ½ hour difference in time of day.

Plaintiff testified that he did not have a problem with the $14,500 amount, but did have a problem with the fact that he was "lied to" regarding the fines and costs, and that after the telephonic hearing, he spoke to the transport officers, who told

-11-

him that they heard Mr. Beard and Judge Marschewski say they could not reach the prosecuting attorney.

Plaintiff testified that at the settlement conference, they talked about his mother's personal information and what he wanted done with "the stuff."  He also said that the signature on the Medicare & Medicaid Services form was his handwriting. Plaintiff testified that it was not until later on in the evening of the day of the Settlement Conference that he read the documents.

Plaintiff conceded that he had previously moved to withdraw a settlement agreement of $10,000, and was allowed to withdraw the settlement agreement because he had not received the check in a timely manner.

When Plaintiff was asked at the February 28, 2012 hearing whether he understood that the Joint Motion to Dismiss would result in dismissal of the lawsuit against Defendants, Plaintiff answered "Yeah, I probably."  Plaintiff did not remember calling his mother two days after the settlement conference and asking her to pay the fines and costs.  He also did not remember why Defendants raised the offer after it was determined they could not waive the fines and costs. Plaintiff conceded that there was nothing he would have done at the Settlement Conference that would have alerted anyone of his cognitive abilities.

Mr. Beard testified that Plaintiff did not have slurred

-12-

speech at the settlement conference, nor did he ever indicate that he was having any difficulty understanding anything at the settlement conference.   Mr. Beard stated that he met with Plaintiff prior to seeing Judge Marschewski, and when Plaintiff indicated he would not agree to less than $15,000, it was apparent they were not going to be able to settle without the judge's assistance.   Mr. Beard testified that he thought they had a settlement previously, but that Plaintiff came back and wanted more, so Mr. Beard was concerned that even if he and Plaintiff had reached an agreement in the room, it might be changed by the time they got to the courtroom.

Mr. Beard testified that Judge Marschewski never expressed concern about Plaintiff's cognitive function, that he witnessed Plaintiff sign all of the documents, and that Plaintiff did not appear impaired at all.   Mr. Beard recalled that Judge Marschewski went line by line, paragraph by paragraph, over the Settlement Agreement with Plaintiff, and answered any questions Plaintiff had.   He stated that there was quite a bit of conversation about the medicaid form, because Judge Marschewski asked Mr. Beard why Plaintiff had to sign the document.

Mr. Beard testified that he made two or three calls to the Benton County Prosecutor's office.   He finally spoke to Prosecuting Attorney Van Stone, and came to realize that it would be a much harder process to have the fines and costs

-13-

waived.  Mr. Stone said he was not unwilling to work with Mr. Beard, but he felt that he did not have the authority to do anything without some authority from the judge who imposed the fines and costs.  In lieu of that, Mr. Beard decided to offer a greater amount of dollars, to which Plaintiff agreed.  He testified that he never told Plaintiff that he was unable to contact the prosecuting attorney.  In fact, he did not recall having a conversation with Plaintiff at all about whether he spoke to the prosecuting attorney.

Mr. Beard testified that he had spoken with Plaintiff many times over the phone and also met with him in person, and could not tell any difference in the way Plaintiff behaved on the day of the February 28, 2012 hearing and the way he behaved at the settlement conference on December 2, 2011.

Mr. Beard also noted that the provision in the settlement agreement requiring the county to pay for any outstanding medical bills incurred by Plaintiff at the Benton County Detention Center was not normal, and was something Plaintiff had to have asked for at the settlement conference.

**II. MOTION TO WITHDRAW MOTION TO DISMISS AND SETTLEMENT AGREEMENT (DOC. 107):**

Basic principles of contract law govern the existence and enforcement of an alleged settlement agreement.  <u>Butler v. Norris</u>, 2010 WL 3583582 at *1 (8th Cir. 2010),citing <u>Chaganti & Assoc., P.C. v. Nowotny</u>, 470 F.3d 1215, 1221 (8th Cir. 2006).

-14-

"The essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation". City of Dardanelle v. City of Russellville, 277 S.W. 3rd 562, 565-66 (Ark. 2008). "The fact that appellant entered into an agreement which later appeared improvident to her is no ground for relief." Bishop v. Bishop, 961 S.W.2d 770, 775 (Ark. App. 1998), citing Helms v. Helms, 317 Ark. 143, 875 S.W.2d 849 (1994). Parties to a voluntary settlement agreement cannot avoid the agreement "simply because the agreement ultimately proves to be disadvantageous." Bishop, 961 S.W.2d at 775.

Plaintiff's argument goes to whether he was "competent" at the time the settlement agreement was signed. To the extent Plaintiff seeks to avoid the settlement agreement by asserting that he was not of sound mind because he was under the influence of medication, the Court believes his argument fails.

Plaintiff's testimony on this issue, in light of the evidence of record, is less than credible. Plaintiff stated that he did not take the Nortryptline when he wanted to work on his case, and yet, knowing he was going to be participating in a settlement conference on December 2, 2011, Plaintiff nevertheless took the medicine on midnight on December 1, 2011.

Plaintiff had ample opportunity to advise Judge Marschewski and Mr. Beard that he did not feel like he was of sound mind to

-15-

make a decision regarding settlement, and yet never advised anyone to that effect until after the settlement conference and after the settlement agreement and joint motion to dismiss were signed by the parties.

Plaintiff conceded that he was not contesting the amount of the settlement - $14,500. Instead, he is only challenging the fact that the settlement agreement did not allow for waiver of the fines and costs. It is clear that the amount finally offered, $14,500, was given in lieu of Defendants' inability to obtain a waiver of the fines and costs.

The Court also notes that Plaintiff had taken the Nortryptline on the day of the telephonic hearing - December 12, 2011, which was held at approximately 2:00 pm. Judge Marschewski's settlement conference ended at a time on December 2, 2011, that was only 2 ½ hours prior to the time the telephonic hearing occurred with the undersigned, and the Court did not detect any problems with Plaintiff's understanding of the proceedings during the telephonic hearing. In addition, it is clear to the Court that Plaintiff was able to provide Judge Marschewski with personal information at the settlement conference, was able to request payment of medical expenses, remembered where he was and why, and was able to communicate clearly with Mr. Beard and Judge Marschewski. The Court believes that the only reason Plaintiff is seeking to withdraw

-16-

from the settlement agreement is because he subsequently decided that he was unhappy that fines and costs were not provided for in the agreement.   This is not a sufficient reason to grant Plaintiff's request.   <u>See</u> <u>Bishop</u> 961 S.W.2d at 775.

The Court believes Plaintiff was competent to enter into the Settlement Agreement, and the fact that he later decided he was unhappy with the agreement does not warrant the setting aside of the agreement.

## III. DEFENDANTS' MOTION FOR SANCTIONS (DOC. 123):

Defendants request the Court issue sanctions against Plaintiff and make specific factual findings as to Plaintiff's malicious and slanderous allegations that Judge Marschewski and Mr. Beard "lied" to him.   (Doc. 123 at p. 1).  Plaintiff stated that Judge Marschewski and Mr. Beard "lied" to him because they said they were unable to contact the prosecuting attorney to discuss waiver of the fines and costs.   However, the record reflects that neither Judge Marschewski nor Mr. Beard ever said such a thing.   Instead, Judge Marschewski stated on the record that they "were unable to get confirmation through the – through the prosecutor's office or the court system in Benton County to waive that fine –" (Doc. 121 at p. 4).

Frivolous and malicious motions violate Rule 11 of the Federal Rules of Civil Procedure.   <u>United States v. Hawley</u>, 768 F.2d 249, 250 (8th Cir. 1985).   The Court does not believe that

-17-

the evidence and testimony elicited in these proceedings supports Plaintiff's contention. Judge Marschewski only advised Plaintiff that they were unable to "get confirmation" through the prosecutor's office or the court system in Benton County to waive the fines.

The Court finds Mr. Beard's testimony credible when he said that he never told Plaintiff that he was unable to contact the prosecuting attorney. In fact, he said that if he had said anything, he would have told Plaintiff that he had just spoken to the prosecuting attorney.

The Court advised Plaintiff at the February 28, 2012 hearing that from experience, it was not surprising that it was difficult to obtain a waiver of the fines and costs, since the judicial authority who imposed the fines and costs is the individual who must waive the fines and costs.

Having reviewed the transcript of the proceedings before Judge Marschewski, as well as the testimony at the telephonic hearing on December 12, 2011, and the evidentiary hearing held on February 28, 2011, the Court does not believe the record supports Plaintiff's allegations that Judge Marschewski and Mr. Beard "lied" to him. In fact, in the Court's opinion, such allegations, which continue to be made by Plaintiff, rise to the level of frivolous and malicious.

Accordingly, the Court believes sanctions should be imposed

-18-

against Plaintiff in the form of payment for the time and costs expended by Defendants in defending the Motion to Withdraw Settlement Agreement and Joint Motion to Dismiss.

**IV.  PLAINTIFF'S MOTION FOR SANCTIONS (DOC. 132):**

In his motion, Plaintiff asks the Court to impose sanctions against Mr. Beard and his law firm in the amount of $5,000.00, and that specific factual findings should be entered to show Mr. Beard "lied" to the court and Plaintiff about the terms of the settlement.  (Doc. 132 at p. 1).

For reasons more fully set forth above, the Court believes Plaintiff's Motion for Sanctions should be denied.  The evidence clearly reflects that Mr. Beard did not lie to Plaintiff, and sanctions for such would therefore be inappropriate.

**V.  CONCLUSION:**

For all the reasons set forth above, the Court hereby recommends the following:

1.  Plaintiff's Motion to Withdraw Motion to Dismiss and Settlement Agreement (Doc. 107) should be denied;

2. Defendant's Motion for Sanctions (Doc. 123) should be granted, and Defendants should provide the Court with an itemization of time and costs incurred in defending the Motion to Withdraw Motion to Dismiss and Settlement Agreement;

3. Plaintiff's Motion for Sanctions (Doc. 132) should be denied.

-19-

The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

IT IS SO ORDERED this 17th day of May, 2012.

/s/ Erin L. Setser
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-20-